No. 3191

Second Circuit

KROUSE v. STEWART ET AL.

(March 12, 1929. Opinion and Decree.)
(April 5, 1929. Rehearing Refused.)

L. K. Watkins, of Monroe, attorney for plaintiff, appellant.

McInnis and Campbell, of Minden, attorneys for defendants, appellees.

ODOM, J. Plaintiff and defendants are all children or descendants of Mrs. Rosaura Krouse who died in 1918. In July, 1911, the said Mrs. Krouse, who owned as her separate property some 390 acres of land near Minden, Louisiana, entered into a purported lease contract with one of her sons, C. P. Krouse, plaintiff here, whereby she leased to him all of said land for a period of 25 years. The consideration for the lease as expressed in the contract, which was signed by both parties and duly recorded, is "$1,000 heretofore received by lessor from the lessee, constituting a debt due by her to said lessee which debt is hereby cancelled; and the further consideration of the care and support given the lessor by said C. P. Krouse for the past 16 years; also the improvements put on the property of the value of $1,000 by said C. P. Krouse."

The said contract contained the following stipulation: "Said C. P. Krouse shall and is hereby granted partly for the above consideration the right to purchase the property herein described at any time during the term of this lease for the price and sum of $3.00 per acre."

Three years later, in 1914, C. P. Krouse exercised his option to purchase the land under the last quoted clause of the contract, and accordingly, Mrs. Krouse executed a deed transferring to him 310 acres of the land for the purported cash consideration of $3.00 per acre.

Mrs. Krouse died in 1918. Shortly after her death, her other forced heirs sued the vendee to set the sale aside on the ground that it was a fraudulent simulation. The District Court set the sale aside and that judgment was affirmed on appeal by this Court on January 27, 1920.

In that suit, C. P. Krouse, defendant, who is plaintiff here, made two alternative demands, one of which was that the lease from his mother to him be declared a valid obligation. For some reason, the District Court did not pass on that part of defendant's alternative demand, and, while this Court said this should have been done, yet inasmuch as it was not, defendant's demand in that respect was dismissed as in case of non-suit.

The present suit is by C. P. Krouse against the other heirs of Mrs. Krouse for specific performance of the contract above referred to, demanding that said heirs now execute in his favor a deed to said property at $3.00 per acre under the option given him to purchase.

There were exceptions, both dilatory and peremptory, filed by defendants, which were either overruled or referred to the merits. Defendants also filed pleas of estoppel and res adjudicata which were referred to the merits. Reserving their rights under all exceptions and pleas, defendants answered setting up that the pretended option and contract entered into by Mrs. Krouse and C. P. Krouse in 1911, was null and void as having been given without consideration; that the price stipulated was vile and insignificant, the price named being less than one-fourth the value of the property; that the effect of the contract was to divest Mrs. Krouse of all her property; and that it was void for want of mutuality and was a nudum pactum.

There was judgment in the lower court rejecting plaintiff's demands, and he has appealed.

## OPINION.

Our learned brother of the District Court rejected plaintiff's demands on the ground of estoppel. The lease contract with an option to purchase was entered into between Mrs. Krouse and C. P. Krouse, plaintiff in this case, in 1911. Three years later, C. P. Krouse exercised his option to purchase the land and caused his mother to deed 310 acres thereof to him, at $3.00 per acre. The deed was duly recorded in the notarial records and C. P. Krouse took possession and held as owner until 1918, when his mother died, and for some years thereafter. When his co-heirs sued him to set aside the sale, he answered, alleging that he had exercised his option to buy and had bought the property for a valuable consideration which he had paid in cash. As a witness in his own behalf, he swore to those facts.

The District Judge was of the opinion that, having exercised his option to purchase the land, the contract and option of 1911 was at an end, and that C. P. Krouse has no rights under it now, and, having alleged and sworn in the former suit between the same parties that he owned the land, he is now estopped to deny these allegations, and that he has no standing in Court now against his co-heirs to force them to make title to him under the contract.

That holding may be correct. We have given the point no consideration for the reason that the case is before us, not only on the exceptions and pleas filed by defendants, but upon the merits as raised by the answer as well, and we prefer to go directly to the merits and rest our decision there.

Defendants specifically challenged the validity of the so-called contract of 1911 on various grounds, one of which was that it was entered into by Mrs. Krouse without any consideration whatsoever and was the result of a fraudulent scheme practiced by this plaintiff upon his aged mother in order to get possession of all her property to the detriment of her other children and descendants.

The record in the former suit was filed in evidence in the present suit. Both records are voluminous, but we have laboriously read them both and arise from that reading thoroughly convinced that the contract which plaintiff now seeks to enforce was without any consideration whatsoever, and was therefore never binding on Mrs. Krouse, and is not binding upon her heirs; and furthermore, that the price stipulated at which C. P. Krouse might purchase the land was inconsiderable as compared with the real value of the property, and was therefore vile.

The facts as disclosed by the record are that Mrs. Krouse and her husband, Dr. Krouse, had eight children. Dr. Krouse died leaving no property. Mrs. Krouse, his wife, however, owned in her own name and right considerable real estate, including the 310 acres here involved, on which there was a farm in good state of cultivation. After her husband's death, Mrs. Krouse turned her business, including the management of the farm, over to one of her sons, Otto, who looked after it and his mother until his death, about 1895. After Otto's death, the plaintiff, who was single, took his place in the household of his mother, as well as the possession and management of the farm. All the other children, except possibly two, had left home and these two soon left. The plaintiff and his mother lived together on the homestead from 1895 until her death in 1918. During all of that time, plaintiff

had entire charge of the farm, as well as some live stock, all of which belonged to his mother. During a portion of the time, he leased some of the land on shares and at times hired labor to help make the crops. But, during the whole time, he paid his mother no rent and never accounted to her for any of the revenues from the property. Whatever he made, he claimed and kept as his own. His mother got nothing above the bare, and we think, scant necessities of life. We are not alone in our conclusion that what little she got was doled out to her by her son with a miserly hand. The late Judge Porter, who was the organ of this Court in the former suit in which the present plaintiff was defendant, in discussing the conditions under which Mrs. Krouse lived with her son, said:

"And while we do not give full credit to a good deal of the testimony which is designed to prove that her life with the defendant was one of abject poverty, it is made clear that she either denied herself or was denied by her son of all the luxuries and many of the necessities of life. She led the life of a recluse, rarely if ever leaving home, even for the purpose of attending church.

"And now the son who has enjoyed the use of the place, and we judge that it is and has been a productive one,—for more than twenty years, claims that he is the owner of it."

The testimony makes it clear, in fact the plaintiff himself says, that from the time he took charge in 1895 until 1911, the date on which he procured from his mother the contract which he now attempts to enforce against his co-heirs, his mother was in good health and very active. She kept the house, did all of the cooking—not only for herself and the plaintiff, but for the hired hands as well. Plaintiff says that for some years prior to her death, she was feeble, and that he got colored women to do the milking and some of the housework. But that was after 1911—after the date on which this contract was entered into. Such were the conditions for sixteen years prior to the date of the contract which plaintiff now seeks to enforce.

Now what were the considerations of that contract? It recites that it is "the sum of $1,000, heretofore received by the lessor (Mrs. Krouse) from the lessee (plaintiff), and heretofore constituting a debt due by her to said lessee which debt is hereby cancelled, and the further consideration of the care and support given the lessor by the said C. P. Krouse for the past 16 years, also the improvements put on the property of the value of $1,000."

Plaintiff says that the debt of $1,000 was for amounts which he paid for his mother. But he does not say that these debts were due when he took charge of the property in 1895, except possibly the funeral expenses of his brother, Otto, which he paid and seems to have charged to his mother. If it be conceded that plaintiff did pay out as much as $1,000 for her, which we doubt, that amount would be more than offset by the value of the use of the property for 16 years. If he had allowed his mother only $62.50 per year for home, farm and live stock, he would have been due her $1,000. But, as stated, he allowed her nothing—accounted for nothing.

The next item is for "care and support for 16 years." But she was living in her own house, on her own farm and was caring, not only for herself, but for plaintiff also. She gave him a house to live in, made his beds, cooked for him and his hired hands, to cultivate, not his farm, but hers. All she received for her services as milkmaid, cook and housekeeper was what food she ate and enough cheap clothes to cover her body.

As to the improvements on the land, plaintiff says he cleared some land and built some cabins, but that was after 1911. He kept up the fences, but he had the use of the land under fence.

Therefore, taking plaintiff's own theory of the situation, he took charge of his mother's property, including a productive farm, lived in her house, got the benefit of her services, paid her nothing therefor, but charged her for everything, even for food, and sets out these charges as a consideration for the contract.

From the record, it is patent that plaintiff received from his mother vastly more than the amount which he claims to have paid out for her and the value of the improvements which he says he made on the farm. It follows, therefore, that at the time this contract was entered into in 1911, Mrs. Krouse was in no sense indebted to him, and, as the consideration expressed in the contract is her indebtedness to him, there was no consideration at all.

Defendants allege that the price of $3.00 per acre was vile, and the testimony shows that it was. Included in the tract which she agreed to sell was the southwest quarter of the northwest quarter and the northwest quarter of the southwest quarter of Section 20. On January 7, 1914, Mrs. Krouse and plaintiff sold that 80 acres of land at $10.00 per acre cash. A number of witnesses testified that the entire tract was worth from $10.00 to $12.00 per acre in 1911, and at least $20.00 per acre now. There was approximately one million feet of merchantable timber on the land in 1911, which at the then prevailing price of $1.00 per thousand was worth as much or more than the agreed price of the land, including the timber.

In the making of this contract, we think Mrs. Krouse was influenced and dominated by this plaintiff. We cannot otherwise account for her conduct in making a contract with her son which was wholly against her interest. By that contract, she divested herself of her home and all of her property for 25 years, without reserving even the right to occupy the house. She was to receive nothing in the future during the life of the lease. Under that contract, if valid, the son could have put her in the road at any time. Under that lease, her property was wholly worthless. It was tied up in the hands of plaintiff for a quarter of a century without any future consideration. When it was made, Mrs. Krouse had already lived out her allotted "three-score and ten" years, and, judging from her son's conduct towards her in the past, she could not reasonably hope that he would do anything for her in the future. In addition to that, plaintiff was given an option to purchase the property at any time within 25 years at a vile price, and he assumed no obligation to purchase even at the end of that time.

The plaintiff's pretensions of good faith were repudiated by both Courts in his former suit. In that suit, he reconvened for the $1,000 indebtedness which he claimed against his mother for advances and $800.00 for support. The District Court rejected his demands and this Court affirmed that decision.

For the reasons assigned, the judgment rejecting plaintiff's demands and dismissing his suit, at his costs, is affirmed.